

FILED
January 25, 2021
SX-2021-CV-00047
TAMARA CHARLES
CLERK OF THE COURT

# IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| Link Baltimore, *Plaintiff* v. Virgin Islands Industrial Maintenance Corp. *Defendant* | SX-2021-CV-00 <br><br> **Jury Trial Demanded** <br><br> **Complex Litigation Division** |

## COMPLAINT

Plaintiff Link Baltimore brings this action for damages under the laws of the United States Virgin Islands, demands a trial by jury, and makes the following allegations based on information, belief, and investigation of counsel, except those allegations that pertain to Plaintiff, which are based on personal knowledge:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff is a citizen and resident of Kenner, LA of the United States.

2. Defendant Virgin Islands Industrial Maintenance Corp. ("IMC") is a Virgin Islands corporation, having its principle place of business in the Virgin Islands.

3. This Court has subject matter jurisdiction pursuant to 4 V.I.C. § 76.

4. Venue is this District is proper pursuant to 4 V.I.C. § 78 because the conduct complained of in this Complaint was carried out in substantial part within this judicial division.

### FACTUAL ALLEGATIONS RE: THE PLAINTIFF

5. Plaintiff worked at the oil refinery (the "Oil Refinery") previously-owned by Hess Oil Virgin Islands Corp. ("HOVIC") on St. Croix, Virgin Islands

6. Plaintiff worked at the Oil Refinery from 1989 to 1997.



Complaint
*Link Baltimore v. Virgin Islands Industrial Maintenance Corp.*

7. During the Plaintiff's work at the Oil Refinery, Plaintiff worked as a janitor, scaffolder, and worked turnaround.

8. In the course of Plaintiff's employment at the Oil Refinery, Plaintiff was exposed to dusts from asbestos containing materials ("ACM"), silica, and catalyst.

9. Plaintiff used no or substandard respiratory protection during his employment at the Oil Refinery, which was wholly inadequate to guard against the inhalation of toxic substances like asbestos, silica, caustic, and catalyst.

10. Plaintiff suffers from pneumoconiosis, which became evident 2/29/2020.

11. This disease is evidenced by a chest x-ray (read by a competent NIOSH-certified B-reader) a pulmonary function test (PFT), a physical examination, and a discussion and consideration of Plaintiff's work history, among other things.

12. Plaintiff's lung disease is characterized by shortness of breath, diminished lung capacity, and other respiratory ailments.

13. This disease and injury are the direct and proximate result of Plaintiff's repeated exposure to various toxic substances during Plaintiff's work at the Alumina Refinery and the Oil Refinery.

14. Plaintiff's injuries are current and will continue for the rest of plaintiff's life. Plaintiff seeks recompense for Plaintiff's pain and suffering; medical bills and anticipated medical needs in the future; and the diminution in quality and enjoyment of Plaintiff's life.

15. Plaintiff fears the progression of plaintiff's respiratory symptoms and reasonably fears that plaintiff may develop cancer as a result of persistent exposure to toxic materials and substances.

16. Plaintiff is also at a medically and statistically significant increased risk of developing lung cancer, mesothelioma, and other cancers.

**FACTUAL ALLEGATIONS RE: THE OIL REFINERY**

17. HOVIC owned and operated an Oil Refinery on St. Croix from 1966 to 1998. The Oil Refinery transformed and refined crude petroleum into various useful products.

18. At all relevant times to this action, the Oil Refinery was owned by HOVIC.

19. At all relevant times, HOVIC was a wholly-owned subsidiary of Hess.

20. The Oil Refinery is a very large complex of units, many of which employ hot processes to transform feedstock into a refined product.

21. These hot processes called for the use of extensive amounts of insulation to keep the boilers, heaters, and pipelines at a very high temperature.

22. A large percentage of the insulation used at the Oil Refinery was asbestos-containing.

23. Many of the units at the Oil Refinery make use of catalyst to crack certain hydrocarbons into desirable components.

24. The catalysts were made of heavy metals like nickel, molybdenum, and cobalt.

25. During routine maintenance and turnaround, employees at the Oil Refinery would frequently handle and inhale spent catalyst.

26. Research has shown that constant exposure to asbestos and catalyst can cause serious medical problems.

27. Oil refiners have long understood the dangers posed by exposure to asbestos and catalyst dusts.

28. The U.S. Federal Government has long regulated the limits of industrial exposure to these dangerous materials, including asbestos and catalyst.

29. The U.S. Virgin Islands has long regulated emissions of fugitive particulate matters.

30. Industry must take all reasonable steps to guard against the release of asbestos and catalyst dusts through sound engineering.

Complaint
*Link Baltimore v. Virgin Islands Industrial Maintenance Corp.*

31. During the course of Plaintiff's employment at the Oil Refinery, Plaintiff came into contact with and inhaled asbestos- and catalyst-laden dusts well in excess of the government limits as well the scientific consensus standards.

32. Because engineering may not contain all dusting, persons in industrial settings that could be exposed to excessive dust levels must be given proper and timely warnings, training, and personal protective equipment, including respiratory protection.

33. Government regulators have also required industrial facilities to conduct air tests to assess the concentration of particulate matter. At all relevant times, the Oil Refinery was not equipped with the appropriate equipment to measure particulate concentration. The limited testing that was conducted was substandard, and the tests failed to accord with industry and scientific best practices.

34. IMC knew of the Government's exposure limits and their importance to the health of workers in industrial settings.

35. IMC's workforce routinely used, handled, and/or manipulated asbestos-containing materials, silica, and catalyst ("toxic substances") as part of their work at the facility.

36. IMC lacked the expertise to anticipate, identify, evaluate, and train various refinery workers to encounter these toxic substances safely.

37. IMC failed to adopt timely and adequate occupational safety and health policies and procedures regarding the appropriate use, handling, and manipulation of these toxic substances. In particular, IMC failed to timely and adequately anticipate potential exposures to these toxic substances; failed to timely and adequately identify and monitor exposures to these toxic substances; failed to timely and adequately train and warn of the hazards associated with exposures to these toxic substances; and failed to timely and adequately provide appropriate personal protective equipment to reduced and/or eliminate exposures to these toxic substances.

Complaint
*Link Baltimore v. Virgin Islands Industrial Maintenance Corp.*

38. As a result of these failures, IMC's failure to implement proper toxic substance protocols and safety measures resulted in refinery workers, like the Plaintiff, suffering needless exposure to toxic substances, like asbestos, which causes the Plaintiffs' lung scarring.

39. These failures to adopt and enforce timely and adequate occupational health and safety policies and procedures were negligent. IMC knew or should have known that these failures risked worker exposure to the toxic substances.

40. IMC knew or should have known that, in the absence of robust occupational health and safety policies, procedures and enforcement, all exposed refinery personnel were placed at substantially increased risk of developing lung disease.

41. From IMC's vantage, it was reasonably foreseeable that Plaintiff would be exposed to the toxic substances and be injured.

## LINKCAUSES OF ACTION AGAINST
## VIRGIN ISLANDS INDUSTRIAL MAINTENANCE CORP.

### Count 1 – Chattel Known to be Dangerous for Intended Use

42. Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

43. IMC is liable to Plaintiff under Section 388 of the Restatement (Second) of Torts, which articulates a sound common law rule for the Virgin Islands.

44. IMC supplied ACM, silica, and catalyst—"Chattels"—to its contractors and their employees at the Oil Refinery.

45. IMC expected its contractors and their employees (including Plaintiff) to use the Chattels, as well as expected that Plaintiff could be endangered by the probable uses of the Chattels

46. Plaintiff was harmed by the Chattels supplied by IMC to the Oil Refinery for use.

Complaint
*Link Baltimore v. Virgin Islands Industrial Maintenance Corp.*

47. IMC knew or had reason to know that the Chattels are dangerous or likely to be dangerous to humans.

48. IMC had no reason to believe that its contractors or Plaintiff would realize the dangerous condition posed by the Chattels.

49. IMC failed to exercise reasonable care to inform either its contractors or Plaintiff of the dangerousness of the Chattels or the facts which make them dangerous.

50. IMC directly and proximately caused, and is legally responsible and liable for, Plaintiff's exposure to the Chattels, as well as the harm and damages Plaintiff has sustained as a result of Plaintiff's exposures.

**<u>Count 2 – Chattel Unlikely to be Made Safe for Use</u>**

51. Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

52. IMC is liable to Plaintiff under Section 389 of the Restatement (Second) of Torts, which articulates a sound common law rule for the Virgin Islands.

53. IMC supplied ACM, silica, and catalyst—"Chattels"—to its contractors and their employees at the Oil Refinery for use.

54. While IMC provided warnings and MSDS sheets to its contractors, those warnings and sheets went unheeded. IMC knew or should have known that its warnings and sheets were not being communicated to the workforce at the Oil Refinery.

55. IMC knew or should have known that the Chattels were unlikely to be made reasonably safe before being put to the use at the Oil Refinery in the manner expected.

56. Plaintiff was a foreseeable user of the Chattels, as well as endangered by the probable use of those Chattels.

57. Plaintiff was ignorant as to the dangerous character of the Chattels and was not contributorily negligent.

58. IMC directly and proximately caused, and is legally responsible and liable for, Plaintiff's exposure to the Chattels, as well as the harm and damages Plaintiff has sustained as a result of this exposures.

**Count 3 – Chattel for Use by Person Known to be Incompetent**

59. Plaintiff hereby realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

60. IMC is liable to Plaintiff under Section 390 of the Restatement (Second) of Torts, which articulates a sound common law rule for the Virgin Islands.

61. IMC supplied asbestos products and catalyst—"Chattels"—to its contractors and their employees at the Oil Refinery.

62. IMC knew or had reason to know that its contractors and their employees at the Oil Refinery were using the Chattels in a manner that posed an unreasonable risk of physical harm to Plaintiff.

63. In particular, IMC knew or had reason to know that its contractors were incompetent, as they facility lacked an adequate respiratory policy prior to the mid-1990s and ignored OSHA regulations.

64. IMC should have expected that Plaintiff would be endangered by the use of the Chattels at the Oil Refinery.

65. IMC directly and proximately caused, and is legally responsible and liable for, Plaintiff's exposure to the Chattels, as well as the harm and damages Plaintiff has sustained as a result of Plaintiff's exposures.

Complaint
*Link Baltimore v. Virgin Islands Industrial Maintenance Corp.*

## NOTICE OF PUNITIVE DAMAGES

66. Plaintiff seeks punitive damages against IMC.

67. IMC's failures as described herein were intentional and/or done or with a willful or reckless disregard of the rights of others, including the plaintiff.

68. An award of punitive damages is warranted to punish the defendant, deter similar conduct by others, encourage others harmed to step forward, and to additionally compensate Plaintiff for the egregious conduct to which he was subjected.

## JURY TRIAL DEMANDED

69. Plaintiff demands a trial by jury, pursuant to 5 V.I.C. § 358 and Rule 38(b) of the Virgin Islands Rules Civil Procedure, of all issues so triable.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests:

a. After trial by jury, Plaintiff be awarded full monetary damages afforded by law, including punitive damages;

b. Plaintiff be awarded pretrial interest from the date of the initial Complaint through final judgment;

c. Plaintiff be awarded Plaintiff's costs; and

d. The Court grant such additional relief as may be deemed just and proper.

Complaint
*Link Baltimore v. Virgin Islands Industrial Maintenance Corp.*

**DATED:** January 25, 2021  Respectfully submitted,



Korey A. Nelson, Esq. (V.I. Bar No. 2012)
C. Jacob Gower, Esq. (V.I. Bar No. 2103)
BURNS CHAREST LLP
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765
knelson@burnscharest.com
jgower@burnscharest.com

Warren T. Burns, Esq. (V.I. Bar No. 2004)
Daniel H. Charest, Esq. (V.I. Bar No. 2020)
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
wburns@burnscharest.com
dcharest@burnscharest.com

J. Russell B. Pate, Esq. (V.I. Bar No. 1124)
THE PATE LAW FIRM
P.O. Box 890
St. Thomas, USVI 00804
Telephone: (340) 777-7283
Facsimile: (888) 889-1132
pate@sunlawvi.com

Arthur M. Murray, Esq. (V.I. Bar No. R2105)
MURRAY LAW FIRM
650 Poydras Street, Suite 2150
New Orleans, LA 70130
Telephone: (504) 525-8100
Facsimile: (504) 584-5249
amurray@murray-lawfirm.com